1   COOLEY LLP                          COOLEY LLP
    JEFFREY M. GUTKIN (216083)          JORGE L. SARMIENTO (Admitted *Pro Hac Vice*)
2   (jgutkin@cooley.com)                (jsarmiento@cooley.com)
    AARTI REDDY (274889)                55 Hudson Yards
3   (areddy@cooley.com)                 New York, NY 10001-2157
    AMY M. SMITH (287813)               Telephone:    +1 212 479 6000
4   (amsmith@cooley.com)                Facsimile:    +1 212 479 6275
    MORGAN E. LEWIS (322205)
5   (melewis@cooley.com)
    JULIA M. IRWIN (352861)
6   (Jirwin@cooley.com)
    3 Embarcadero Center, 20th Floor
7   San Francisco, California 94111-4004
    Telephone:    +1 415 693 2000
8   Facsimile:    +1 415 693 2222

9   Attorneys for Defendant
    LINKEDIN CORPORATION
10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                       SAN JOSE DIVISON

14

15  J.P., individually and on behalf of all others   Case No. 5:24-cv-07586-NC
    similarly situated,
16                                                    **DEFENDANT LINKEDIN CORPORATION'S
                        Plaintiff,                    MOTION TO DISMISS THE PLAINTIFF'S
17                                                    COMPLAINT**
               v.
18                                                    Date:      March 6, 2025
    LINKEDIN CORPORATION,                             Time:      9:00 a.m.
19                                                    Dept:      Courtroom 4, 5th Floor
                        Defendant.                    Judge:     Edward J. Davila
20                                                    Trial Date: TBD
                                                      Date Action Filed: November 1, 2024
21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

# TABLE OF CONTENTS

Page

I.      INTRODUCTION. .................................................................................................... 1

II.     BACKGROUND. ..................................................................................................... 3

    A.    The Parties ..................................................................................................... 3

    B.    LinkedIn's Insight Tag .................................................................................. 3

    C.    Headway's Use of LinkedIn's Insight Tag ................................................... 4

III.    ARGUMENT. .......................................................................................................... 5

    A.    Plaintiff Fails to State a Claim Under CIPA § 631. ..................................... 5

        1.    LinkedIn Is Not Liable Under CIPA Section 631 Because It Was a
             Party to the Alleged Communications, Not a Third-Party
             Eavesdropper. ..................................................................................... 6

        2.    Plaintiff's Clause-One Claim Fails for Additional Reasons. ................... 11

        3.    Plaintiff's Claim Under CIPA's Second Clause Has Additional
             Defects. .............................................................................................. 11

        4.    Plaintiff's Claim Under CIPA's Third Clause Has Further Flaws............ 14

    B.    Plaintiff Fails to State a Claim Under CIPA § 632. ................................... 15

    C.    Plaintiff Fails to State a Claim for Invasion of Privacy Under the California
       Constitution. ................................................................................................. 17

        1.    Plaintiff Fails to Allege Any Protected Privacy Interest. ........................ 18

            a.    Plaintiff Fails to Allege an Informational Privacy Interest. .......... 18

            b.    Plaintiff Fails to Allege an Autonomy Privacy Interest. ............... 19

        2.    Plaintiff Fails to Allege a Reasonable Expectation of Privacy in His
             Online Commercial Activity. ............................................................. 20

        3.    The Routine Commercial Behavior Alleged Is Not Highly
             Offensive as a Matter of Law............................................................. 22

IV.     CONCLUSION. ..................................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
  2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........................................................ 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 12, 13

*Byars v. Hot Topic, Inc.*,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023) .................................................................. 7

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................. 17

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. 2024) ...................................................... 10, 11, 13

*Comm. to Def. Reprod. Rights v. Myers*,
  625 P.2d 779 (Cal. 1981) ...................................................................................... 19

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) ................................................................. 22

*D'Angelo v. FCA US, LLC*,
  2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ................................................. 21, 22

*D'Angelo v. Penny OpCo, LLC*,
  2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ....................................................... 20

*Dep'tt of Fair Employment & Housing v. Superior Court*,
  99 Cal. App. 4th 896 (2002) ............................................................................ 18, 19

*Doe I v. Google LLC*,
  2024 WL 3490744 (N.D. Cal. July 22, 2024) ............................................. 6, 11, 14

*Doe v. Beard*,
  63 F. Supp. 3d 1159 (C.D. Cal. 2014) .................................................................. 24

*Doe v. Meta Platforms, Inc.*
  690 F. Supp. 3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024
  WL 4375776 (N.D. Cal. Oct. 2, 2024)................................................................... 17

*Doe v. Microsoft Corp.*,
  2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)................................................... 16

*Esparza v. Gen Digital Inc.*,
  2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ........................................................................ 13

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020).................................................................................................. 6

*Fogelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) .............................................................................................. 24

*Goodman v. HTC America, Inc.*,
  2012 WL 2412070 (W.D. Wash. June 26, 2012)................................................................ 24

*In re Google Assistant Privacy Lit.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................................ 14

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................................... 16, 17, 19

*In re Google Location Hist. Litig.*
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) .............................................................................. 24

*Gutierrez v. Select Portfolio Servicing Inc.*,
  2015 WL 13917190 (C.D. Cal. June 17, 2015) .................................................................. 19

*Hammerling v. Google LLC*,
  2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................................................... 18, 22, 23

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................................. 20

*Heiting v. Athenahealth, Inc.*,
  2024 WL 3761294 (C.D. Cal. July 29, 2024) ....................................................................... 9

*Heiting v. Taro Pharm s. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) .............................................................................. 14

*Herbalife Int'l of Am., Inc. v. Ford*,
  2009 WL 10715605 (C.D. Cal. Mar. 6, 2009) .................................................................... 19

*Hernandez v. Hillside*,
  47 Cal. 4th 272 (2009) ........................................................................................................ 23

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1 (1994) ......................................................................................................*passim*

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................................. 22

*Jackson v. LinkedIn Corp.*,
  2024 WL 3823806 (N.D. Cal. Aug. 13, 2024)...................................................................... 10

*Javier v. Assurance IQ, LLC*,
   649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................................... 8, 9, 10

*Joffe v. Google, Inc.*,
   746 F.3d 920 (9th Cir. 2013) ................................................................................................... 5

*Johnson v. Blue Nile, Inc.*,
   2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ........................................................................... 7

*Jones v. Peloton Interactive, Inc.*,
   2024 WL 3315989 (S.D. Cal. July 5, 2024) ............................................................................ 9

*Jones v. Peloton Interactive, Inc.*,
   720 F. Supp. 3d 940 (S.D. Cal. 2024) ..................................................................................... 7

*Jones v. Tonal Sys., Inc.*,
   2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ...................................................................... 19

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) .................................................................................. 7

*Love v. Ladder Fin., Inc.*,
   2024 WL 2104497 (N.D. Cal. May 8, 2024) .............................................................. 6, 8, 12

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................................... 17, 22

*Martin v. Sephora USA, Inc.*,
   2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ........................................................................ 7

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................................................... 12, 14

*Medical Bd. of California v. Chiarottino*,
   225 Cal. App. 4th 623 (2014) ............................................................................................... 21

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
   2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................................................ 16, 17

*Ojeda v. v. Kaiser Permanente Int'l, Inc.*,
   2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ............................................................... 22, 23

*People v. Superior Court (Smith)*,
   70 Cal. 2d 123 (1969) ........................................................................................................... 16

*Ramos v. The Gap Inc.*,
   2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ..................................................................... 11

*Razuki v. Caliber Home Loans, Inc.*,
   2018 WL 2761818 (S.D. Cal. June 7, 2018) ......................................................................... 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ......................................................................................... 12

*Rodriguez v. Google LLC*,
   2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ...................................................... 13

*Saeedy v. Microsoft Corp.*,
   2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ............................................... 21

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) .............................................................. 21

*Smith v. Fresno Irrigation Dist.*,
   84 Cal. Rptr. 2d 775 (1999) ............................................................................. 19

*St. Aubin v. Carbon Health*,
   2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..................................................... 11

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................................ 9, 13

*Thomas v. Papa Johns Int'l, Inc.*,
   2024 WL 2060140 (S.D. Cal. May 8, 2024) ...................................................... 20

*United States v. Carr*,
   513 F.3d 1164 (9th Cir. 2008) ............................................................................ 5

*Valenzuela v. Super Bright LEDs Inc.*,
   2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .................................................... 9

*Vartanian v. VW Credit, Inc.*,
   2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ................................................. 15

*Vita v. New England Baptist Hosp.*,
   494 Mass. 824 (2024) .......................................................................................... 5

*In re Vizio Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 13

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................... 5, 7, 8

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................................... 19, 21

*Yale v. Clicktale, Inc.*,
   2021 WL 1428400 (N.D. Cal. April 15, 2021) ............................................... 7, 18

*Yockey v. Salesforce, Inc.*,
   2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) .............................................. 9, 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

*Yockey v. Salesforce, Inc.*,
 688 F. Supp. 3d 962 (N.D. Cal. 2023) .................................................................... 9, 17

**Statutes**

Cal. Penal Code § 631 ........................................................................................ *passim*

Cal. Penal Code § 632 ................................................................................ 2, 15, 16, 17

Cal. Penal Code § 637.7 ...................................................................................... 16

**Other Authorities**

California Constitution, Art. I, Sec. 1 .................................................................. 17, 24

**NOTICE OF MOTION AND MOTION**

To All Parties and Their Attorneys of Record:

PLEASE TAKE NOTICE THAT on March 6, 2025 at 9:00 a.m. in Courtroom 4 of the above-captioned Court, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move this Court, pursuant to Federal Rules of Procedure 12(b)(6) for an order dismissing Plaintiff J.P.'s ("Plaintiff") Complaint with prejudice. The Motion is based upon the below Memorandum and Points and Authorities; all papers on file; the Request for Judicial Notice and supporting declaration of Aarti Reddy ("Reddy Declaration") and such further argument that the Court may consider.

**ISSUES TO BE DECIDED**

Whether the Court should dismiss Plaintiff's California Invasion of Privacy ("CIPA") § 631 and § 632 and California constitutional invasion of privacy claims in the Complaint ("Complaint") because he has failed to state a claim under Rule 12(b)(6).

**I.    INTRODUCTION.**

This lawsuit represents yet another attempt by the plaintiffs' bar to attack routine website analytics tools as a criminal wiretap. Indeed, this Complaint is one of *five* nearly identical pleadings that the same Plaintiff's counsel has filed against LinkedIn in the last few months.  Plaintiff J.P. claims that when he and class members visited certain web pages on Headway's website to browse for information about therapy appointments, information about their interactions with that website was transmitted to LinkedIn. LinkedIn offers its advertiser customers the option to install a web pixel or "Insight Tag" (in LinkedIn's parlance) to aid their advertising efforts. According to Plaintiff, because Headway allegedly installed the Insight Tag on certain web pages, LinkedIn should be held liable under California's Invasion of Privacy Act ("CIPA") and for invasion of privacy under the California Constitution. Plaintiff's claims are meritless and the Court should dismiss this Complaint with prejudice.

**CIPA Section 631**. Plaintiff's claim under Section 631 fails for multiple, independent reasons. Plaintiff alleges that LinkedIn violated the first three clauses of the statute because LinkedIn "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable or instrument," (clause one), willfully intercepted Plaintiff's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

communications with Headway and read, attempted to read, or learned their contents (clause two), and used their contents (clause three). *See* Cal. Penal Code § 631. ***First***, nothing in Plaintiff's pleading alleges that LinkedIn acted as anything more than a vendor of an advertising tool that received information on behalf of Headway. Accordingly, LinkedIn, as a party to the communication, has no CIPA liability. ***Second***, Plaintiff's CIPA clause-one claim also fails because, as courts have uniformly held, such a claim is not cognizable as to internet communications. ***Third***, Plaintiff also failed to make any factually supported allegation or, in some cases any allegation at all, regarding several elements of his clause-two claim. Plaintiff did not sufficiently allege that LinkedIn read or attempted to read these alleged Headway communications, that it intercepted them "in transit," or that LinkedIn acted willfully. Lastly, Plaintiff's CIPA clause-three claim also fails because it rests on the flawed clause-one and clause-two claims, and Plaintiff's allegations of "use" are conclusory and premised on generalities about LinkedIn's business. The Court should therefore dismiss this claim with prejudice.

**CIPA Section 632**. Plaintiff's claim under Section 632 of CIPA fares no better. To survive dismissal, Plaintiff must allege that LinkedIn intentionally recorded a "confidential" communication by means of an "amplifying or recording device." *See* Cal. Penal Code § 632. Nothing in his pleading plausibly avers that LinkedIn acted with the requisite intent—indeed, his allegations regarding LinkedIn's state of mind merely parrot CIPA's statutory language. Further, as many courts have held, software code like the Insight Tag does not qualify as a "device" under the statute.

**Invasion of Privacy**. Plaintiff also does not adequately plead a violation of California's constitutional right to privacy. The claim fails because it is premised on Plaintiff's defective wiretapping claim. Additionally, the complaint does not sufficiently allege a protected privacy interest; Plaintiff's allegations contradict any claim that he had a reasonable expectation of privacy in information that he voluntarily input on Headway's website after being fully apprised that LinkedIn may receive information about his interactions with other websites. Setting aside these defects, Plaintiff cannot clear the high bar for alleging a "highly offensive" intrusion sufficient to support a constitutional claim.

Cooley LLP
Attorneys at Law
San Francisco

2

Def.'s Motion to Dismiss
Plaintiff's Complaint
Case No. 5:24-cv-07586-EJD

1    For all of these reasons, the Complaint should be dismissed with prejudice.

2    **II.    BACKGROUND.**

3    **A.    The Parties**

4    LinkedIn is a Delaware corporation headquartered in Sunnyvale, California. The company

5    has created "the world's largest professional network on the internet," which provides a valuable

6    "tool to help users find jobs or expand their professional network." (Compl. ¶ 15.)

7    Plaintiff J.P. alleges he resides in California and claims to have "maintained a LinkedIn

8    account at all relevant times." (*Id.* ¶ 6.) Plaintiff also acknowledges in his pleading that when he

9    "created his LinkedIn account he agreed to LinkedIn's User Agreement," (*id.*), and that "[w]hen

10   first signing up, [] users agree to . . . [LinkedIn's] Privacy Policy and [] Cookie Policy." (*Id.* ¶ 30.)

11   He further alleges that he "scheduled several therapy appointments through [Headway] in 2021 and

12   2022." (*Id.* ¶ 7.)

13   Plaintiff's lawyers have recently launched an assault on the Insight Tag, filing five separate,

14   largely "cut and paste" complaints against LinkedIn in the last two months, all with similar claims

15   and allegations.[1] The allegations and causes of action here are nearly verbatim to those currently

16   pending before Judge Davila and Judge Pitts.

17   **B.    LinkedIn's Insight Tag**

18   LinkedIn enables advertisers to run advertising campaigns through its Marketing Solutions

19   services. (*Id.* ¶¶ 15-16.) Using these services, advertisers can target their advertisements to

20   particular audiences based on certain audience characteristics. (*Id.* ¶ 16.) LinkedIn's Insight Tag is

21   ───────────────

22   [1] *L.B. v. LinkedIn*, 5:24-cv-06832-EJD (N.D. Cal. Sept. 27, 2024) (alleging CIPA violations and

23   invasion of privacy arising out of ReflexMD's implementation of the Insight Tag); *L.W.A. v.*

24   *LinkedIn*, TC24-3559 (Cal. Super. Ct. Cnty. Santa Clara Oct. 22, 2024) (same for Noom website);

25   *V.R. v. LinkedIn*, 5:24-cv-07399 (N.D. Cal. Oct. 23, 2024) (same for CityMD website); *J.S. v.*

26   *Spring Fertility*, 5:24-cv-07374 (N.D. Cal. Oct. 22, 2024) (similar for Spring Fertility website)

27   (bringing CIPA, ECPA, CMIA, and invasion of privacy claims against Spring Fertility, Meta, and

28   LinkedIn).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

1    a piece of JavaScript code that advertisers can install on their websites to enable features like

2    campaign reporting to facilitate their advertising and marketing campaigns through LinkedIn. (*Id.*

3    ¶¶ 22-23; *see also* Declaration of Aarti Reddy in Supp. Def. LinkedIn Corp. Request for Judicial

4    Notice ("Reddy Decl.") Ex. A.) After an advertiser installs the Insight Tag on its website and a

5    LinkedIn member visits that website, the member's browser sends certain information about that

6    visit to LinkedIn. (*Id.* ¶¶ 24-27.) Some of that information is then allegedly sent to LinkedIn's

7    Marketing Solutions advertising systems, where it is provided to advertisers to optimize their

8    advertising campaigns, facilitate advertising retargeting, or help them learn more about their

9    audiences. (*Id.* ¶¶ 16-19.) By helping advertisers analyze their website visitor information,

10   LinkedIn enables those advertisers to target their advertisements to the most receptive LinkedIn

11   members. (*Id.* ¶¶ 19-20.) Notably, while Plaintiff contends that LinkedIn "obtain[s]" "personal

12   details" (*id.* ¶ 28) to help advertisers "target its account holders for advertising" (*id.*), nowhere does

13   he plausibly allege that LinkedIn uses any such data for its own independent purposes or to serve

14   other advertisers apart from Headway itself.

15         **C.      Headway's Alleged Use of LinkedIn's Insight Tag**

16         Plaintiff alleges that "Headway is an online healthcare operator that connects patients with

17   therapists," (*id.* ¶ 36), and that "patients must provide Headway with certain information to find

18   available therapists." (*Id.* ¶ 37.) According to Plaintiff, Headway installed the Insight Tag on pages

19   through which members make selections. (*See id.* ¶ 39.) Plaintiff further alleges that as a LinkedIn

20   member provides information on Headway's website, the Insight Tag on Headway's pages sends

21   various information to LinkedIn, including survey responses and a cookie identifier for the member.

22   (*Id.* ¶¶ 40-43.)

23         Plaintiff contends that, while scheduling therapy appointments in 2021 and 2022, his

24   activity on Headway's website was transmitted to LinkedIn via the Insight Tag and that at the time,

25   he was not aware that Headway had installed the Insight Tag on its website. (*Id.* ¶ 7.) Plaintiff does

26   not contend that he received targeted advertising from either Headway or LinkedIn or that LinkedIn

27   actually ***used*** his data in any way. Instead, he merely alleges that he "discover[ed]" Headway's use

28   of LinkedIn's Insight Tag "around July 2024," under unspecified circumstances. (*Id.* ¶ 47.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

1    **III.    ARGUMENT.**

2        **A.    Plaintiff Fails to State a Claim Under CIPA § 631.**

3        Plaintiff premises his Section 631 claim on CIPA's first three clauses. (Compl. ¶¶ 62-70.)

4    Section 631's first clause applies to any person who intentionally tapped, electrically or otherwise,

5    Plaintiff's transmissions. Cal. Penal Code § 631(a). Section 631's second clause applies to "[a]ny

6    person … who willfully and without the consent of all parties to the communication, or in any

7    unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any . . .

8    communication while the same is in transit . . . within this state." *Id*. Section 631's third clause

9    applies to any person "who uses, or attempts to use, in any manner, or for any purpose, or to

10   communicate in any way, any information" obtained in violation of these other clauses. *Id*.

11   Plaintiff's claim under each of these theories fails for multiple independent reasons.[2]

12       **First**, as an initial matter, Plaintiff cannot proceed under any of his three theories of liability

13   because his Section 631 claim is barred by the party exception. As a vendor that provided a tool to

14   assist Headway with its marketing and advertising efforts, LinkedIn was a party to Plaintiff's

15   alleged communications with Headway, not a third-party "eavesdropper."

16       **Second**, Plaintiff's claims fail under CIPA's first clause because this clause "concerns

17   telephonic wiretapping specifically, which does not apply to the context of the internet." *Williams*

18   *v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022).

19       **Third**, Plaintiff also fails to plausibly allege many of the requisite elements of his claim

20

21   ───────────────────

22   [2] To the extent there is any ambiguity as to the application of CIPA to Plaintiffs' claims, that

23   ambiguity should be construed in LinkedIn's favor, under the rule of lenity. *United States v. Carr*,

24   513 F.3d 1164, 1168 (9th Cir. 2008) (citation omitted); *see also Joffe v. Google, Inc.*, 746 F.3d 920,

25   935 (9th Cir. 2013) (stating that rule of lenity applies even to criminal statutes raised in civil cases,

26   and may apply to Federal Wiretap Act); *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 826

27   (2024) (dismissing wiretapping claims arising from use of MetaPixel and Google Analytics based

28   on rule of lenity upon finding that "the meaning of 'communication' in this context [was]

     ambiguous").

under CIPA's second clause. Specifically, his Complaint is devoid of factual allegations establishing that (1) LinkedIn "read or attempted to read, or to learn the contents or meaning of" any purported communication, (2) that any alleged interception occurred while the communication was "in transit," and that (3) any such interception was "willful."

**Fourth**, Plaintiff does not state a claim under CIPA's third clause because this claim is entirely derivative of his deficient clause-one and clause-two claims, and because he has not plausibly pled that LinkedIn "use[d] or attempted to use" the challenged information. Cal. Penal Code § 631(a). For all of these reasons, the Court should dismiss this claim with prejudice.

## 1. LinkedIn Is Not Liable Under CIPA Section 631 Because It Was a Party to the Alleged Communications, Not a Third-Party Eavesdropper.

To begin, all of Plaintiff's Section 631 claims fail under CIPA's party exception. It is well established that CIPA applies "only to eavesdropping by a third-party and not to recording by a participant to a conversation." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)). Plaintiff's bare pleading fails to allege that LinkedIn acted as anything more than an extension of and a service provider to Headway, which was a party to the alleged communications. The leading case on this topic, *Graham v. Noom*, analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d 832, 832 (N.D. Cal. 2021). Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data***." *Id.* (emphases added). Numerous courts across this district have endorsed this reasoning. *See, e.g.*, *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims); *Doe I v. Google LLC*, 2024 WL 3490744, at *6 (N.D. Cal. July 22, 2024) (applying Graham); *Williams*, 2022 WL 17869275, at *3.[3]

---

[3] *See also Jones v. Peloton Interactive, Inc.,* 720 F. Supp. 3d 940, 946 (S.D. Cal. 2024) (dismissing CIPA claim where third-party vendor "acts as an extension of Peloton, providing a tool that allows

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

1       The same analysis necessitates dismissal here. Plaintiff has not pled that LinkedIn acted as

2   anything more than an extension of Headway. Indeed, both his pleading and documents

3   incorporated by reference in the Complaint establish that the Insight Tag is ***installed by website***

4   ***owners.*** (*See* Compl. n. 17 (citing LinkedIn's "Insight Tag" webpage (attached as Reddy Decl. Ex.

5   A) which describes how advertisers can "manually install the tag . . . yourself[.]") (emphasis

6   added); *see also* Compl. ¶ 23 (explaining that the "Insight Tag is a JavaScript-based code which

7   allows for the installation of its software")). He plainly alleges LinkedIn represents to customer

8   advertisers that the tag is "[a] simple code snippet added to [a] website [that] can ***help you*** optimize

9   ***your campaigns***, retarget ***your website visitors***, and learn more about ***your audiences***." (Compl. ¶

10  22 (emphasis added).) His allegations—which are near-verbatim copied from his counsel's other

11  complaints—then focus on how these tools "***allow[] marketers*** . . . to target potential customers";

12  "***allow advertisers*** to select specific characteristics to help them reach their ideal audience"; and

13  "***allow potential advertisers*** to '[b]uild strategic campaigns.'" (*Id*. ¶ 16 (emphasis added).)

14  Nowhere does Plaintiff allege that LinkedIn shared his data (or any Headway data) with other

15  advertisers or that it used it for any independent purpose. At most, Plaintiff contends that the Insight

16  Tag generally sends certain cookies that allow LinkedIn to identify the user associated with certain

17  Insight Tag transmissions, and then offers a conclusory assertion (again, copied from other

---

Peloton to 'record and analyze its own data in aid of [Peloton's] business'"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (third-party software provider was subject to party exception because software functioned more like a tape recorder, given it was not alleged to have harvested data for its own use); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. April 15, 2021) (vendor providing "Event Triggered Recorder" software was not a third-party eavesdropper since it "allows its clients to monitor their website traffic"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (similar); *see also Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (vendor not a third-party eavesdropper because it acted "as an extension of the company"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar).

pleadings) that LinkedIn can use this information to target ads to account holders. (Compl. ¶ 28.) This bald allegation is not supported by any well-pled facts, and in fact, it is contradicted by the other allegations demonstrating that LinkedIn merely provides data to advertising customers regarding **their own** website visitors to facilitate **their own** ad campaigns. (*See, e.g.*, Compl. ¶¶ 16-20.) Accordingly, the Complaint alleges only that LinkedIn collected and maintained information received **at the direction** of Headway, to enable advertising requested **by** Headway. Just as in *Graham*, *Love*, *Williams*, and other cases, Plaintiff has failed to allege that LinkedIn's Insight Tag was anything more than a mere "tool that [defendant] used to record its own communications with plaintiff." *Williams*, 2022 WL 17869275, at *3; *see also Love*, 2024 WL 2104497, at *1 ("[P]laintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site.").

For many courts, the analysis begins and ends with *Graham*. Plaintiff may, however, invoke another line of cases holding that an analytics provider is not an extension of a defendant if it has "the capability to use" communications for any other purpose than supporting the website operator. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Even if the Court adopted the *Javier* framework, Plaintiff's claims would still fail because he has not alleged that LinkedIn is capable of using information received from Headway for LinkedIn's own independent purposes. Indeed, many courts applying *Javier* have dismissed complaints under the party exception based on similarly conclusory allegations.

As explained above, rather than alleging capability of use, Plaintiff's allegations focus on how the Insight Tag "allows marketers and advertisers" to conduct targeted advertising. (Compl. ¶ 19.) At most, Plaintiff alleges, in a general manner, that "LinkedIn incorporated the information it intercepted from the Headway Website" into unspecified "marketing tools to fuel its targeted advertising service." (*Id.* ¶ 45; *see also id.* ¶ 18 ("personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions").) He further alleges that the Insight Tag may transmit certain cookies that enable LinkedIn to identify the member and that based on this data, LinkedIn is "able to" target its own members with ads. (*Id.* ¶¶ 23-27.) Nowhere does he elaborate on these bare allegations, let alone

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

allege that he ever saw or received targeted advertising himself, that any other specific LinkedIn member did, or that LinkedIn targeted ads based on his or anyone else's Insight Tag data for any customer other than Headway. In this way, his pleading does not plausibly allege that LinkedIn is capable of identifying users for its own independent ad targeting purposes.

As court after court applying *Javier* has held, a plaintiff must plead **specific facts** to support an inference that a vendor independently used the underlying "communication." For example, in *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024), the Court granted dismissal, observing that the plaintiff's allegations that Salesforce "may record, store, and use" the underlying data and "uses chat data to enhance its own business" were "too general and conclusory to support a reasonable inference that Salesforce had the capability to use the communications for any purpose beyond providing it to Defendant." *Id.* Multiple courts have similarly dismissed CIPA claims based on allegations of use that are even more detailed than those at issue here. *See, e.g.*, *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (finding plaintiff's allegation that chat vendor had "capability to use its record of [w]ebsite users' interaction[s]" for data analytics and marketing/advertising to consumers "conclusory and insufficient"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 737-738 (N.D. Cal. 2023) (allegations that defendant "analyz[ed] the data and provid[ed] [] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (dismissing CIPA claim that the provider "analyzes the customer-support agent interactions in real time to create live transcripts of communications"). By contrast, those courts that have denied dismissal based on *Javier* have done so based on allegations that are far more robust than those pled by Plaintiff. *See, e.g.*, *Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *4 (N.D. Cal. Aug. 16, 2024) (finding capability of personal use where plaintiff alleged Salesforce fed chat communications into "Einstein," its "data intelligence platform," to "train the AI models that form the basis of some of [Salesforce's] services"); *Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989, at *4 (S.D. Cal. July 5, 2024) (finding capability of personal use adequately alleged where plaintiff

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

alleged that "Drift analyzes and uses the chat conversations it intercepts [to improve its machine learning technologies] all of which *independently benefits and serves*" Drift).

LinkedIn acknowledges that Judge Pitts recently denied a motion to dismiss involving LinkedIn's Insight Tag. LinkedIn respectfully submits that this decision was in error. The Court dispensed with the vendor argument without rigorous analysis and concluded that the plaintiff in *Jackson* plausibly alleged independent use based on only a few general allegations that the defendant "monetizes the collected data through the sale of ads" and "enables advertisers to target users with relevant content." *Jackson v. LinkedIn Corp.*, 2024 WL 3823806, *5 (N.D. Cal. Aug. 13, 2024). But, as many courts facing similar facts have held, such conclusory allegations are not enough to plead that LinkedIn used data independently, as an eavesdropper. *Supra*. Here, the Court should not follow *Jackson*'s lead and should instead dismiss Plaintiff's CIPA claims because he has not alleged, even in a conclusory fashion, that LinkedIn has the capability to use his alleged communications for its own purposes, let alone made those allegations with the required specificity.

In a similar vein, the Court's decision in *M.G. v. TherapyMatch, Inc.*, which held that the plaintiff adequately alleged Section 631 claims against Headway itself for its use of Google Analytics, does not compel the same result here. That decision does not address the party exception and did not even consider whether Google acted as an extension of Headway—and was thus exempt from liability under *Graham* or *Javier*. Nor did that Court consider most of the other defenses raised here—*i.e.*, that Plaintiff fails to allege willfulness, that the analytics provider read or was capable of reading the underlying data, or that it used the data. 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024). *M.G.* thus does not save Plaintiff's claims against LinkedIn from dismissal.

Finally, even if the Court found Plaintiff's sparse allegations regarding LinkedIn's advertising services sufficient to plead capability of use under *Javier*, his claims would still fail for an independent reason. None of his allegations regarding the analytics tool at issue (Insight Tag) are **tethered to Headway**, let alone Plaintiff's specific communications with Headway's website. In *Cody v. Ring LLC*, the Court found allegations of use "conclusory" where they were based on public reporting that the analytics provider "exploited" chat data for "targeted advertising" but said "nothing about **Ring** [defendant website] or about Meta or Kustomer using **Ring** data to create

targeted advertising." 718 F. Supp. 3d 993, 1003 n.3 (N.D. Cal. 2024) (emphasis added); *see also Doe I*, 2024 WL 3490744, at *3 (dismissing CIPA claims where the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to the use of Google Analytics by the healthcare websites at issue). The same defect plagues Plaintiff's complaint. He relies on generic descriptions regarding "the various services offered via LinkedIn Marketing Solutions," and does not adequately allege facts connecting the Insight Tag to the challenged website. (Compl. ¶ 18.) Such allegations are not sufficient to state a claim under CIPA, and all three of Plaintiff's CIPA claims should be dismissed under the well-established vendor exception.

### 2.    Plaintiff's Clause-One Claim Fails for Additional Reasons.

Plaintiff cannot assert a claim under CIPA's first clause because it is well settled that this provision "prohibits telephonic wiretapping, which does not apply to the internet." *St. Aubin v. Carbon Health*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (citation omitted); *Ramos v. The Gap Inc.*, 2024 WL 4351868, at *3 (N.D. Cal. Sept. 30, 2024) ("[C]ourts have consistently interpreted this first clause as applying only to tapping communications over telephones and not through the internet.") (collecting cases). Plaintiff alleges only internet transmissions: that he accessed Headway's website and that "LinkedIn tracked and intercepted Plaintiff's and Class Members' internet communications while using www.headway.co to book a therapy appointment." (Compl. ¶ 62.) His clause-one CIPA claim fails for this reason as well.

### 3.    Plaintiff's Claim Under CIPA's Second Clause Has Additional Defects.

Plaintiff also fails to plead facts establishing various other elements of a claim brought under CIPA's second clause. Specifically, Plaintiff has not plausibly alleged that LinkedIn: (1) "read or attempted to read" his "communications," (2) while they were "in transit," nor that (3) it did so "willfully." Each of these failures is independently dispositive of his claim.

***Read or Attempting to Read.*** Under CIPA's second clause, Plaintiff must at least plausibly allege facts concerning LinkedIn's attempt to "read, or to learn the contents" of any purported communications. Cal. Penal Code § 631(a). Plaintiff's conclusory allegation that LinkedIn read or attempted to "read, or learn the contents or meaning of Plaintiff's and Class Members' communications to Headway" is a mere recitation of the claim's elements and is not entitled to a

Cooley LLP
Attorneys at Law
San Francisco

11

Def.'s Motion to Dismiss
Plaintiff's Complaint
Case No. 5:24-cv-07586-EJD

presumption of truth. (Compl. ¶ 66; *see also id.* ¶ 63 ("Through these interceptions, LinkedIn intended to learn some meaning of the content the visitors requested.")); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

At most, Plaintiff alleges that LinkedIn **received** his alleged communications, not that it read or attempted to learn their contents. (*See* Compl. ¶ 34 (explaining only how "LinkedIn **intercepts and receives**" the challenged information) (emphasis added).) In *James v. Allstate Insurance Company*, for example, the plaintiff alleged that the defendant's analytics provider "recorded the data and store[d] it on its servers." 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023). The court found such allegations "insufficient to support a plausible interference [that] [the analytics provider] attempted to read or learn the contents of the communications while in transit." *Id.* Plaintiff's allegations that LinkedIn "obtained" certain data from Headway are similarly deficient. (Compl. ¶ 18.) As in *James*, Plaintiff has not pled any facts creating a plausible inference that LinkedIn read or attempted to learn the contents of his alleged communications with Headway, such as by alleging that he was served ads related to information he shared with Headway. *See also Love*, 2024 WL 2104497, at *2 (finding allegation that defendant "may use and share information in an aggregated and de-identified manner" insufficient as it created "no coherent story of how or why FullStory would learn such granular information about users of one of its customers' sites").

Further, an analytics provider that offers a tool to allow customers to process their own data cannot be said to "read" or "learn" the contents of a communication. (*See* Compl. ¶ 22.) If that amounted to a CIPA violation, every software-as-a-service provider would be liable for the use of their tool on any website. Such ubiquitous practices cannot violate CIPA or fit within *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the California Supreme Court's long-standing decision regarding whether a third party is an extension of a party to the communication.

***In Transit.*** "[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); Cal. Penal Code § 631(a) (penalizing attempts to "learn the contents . . . of any . . . communication while the same is in transit"). This means that to state a claim under CIPA's second

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

clause, the plaintiff must allege specific facts including "***when*** the interception occurs." *Swarts*, 689 F. Supp. 3d at 746 (emphasis added). "While Plaintiff[] need not prove [his] theory of interception on a motion to dismiss, Plaintiff[] must provide fair notice to Defendant[] of when [he] believe[s] [Defendant] intercepts [his] communications." *In re Vizio Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *see also Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (emphasis added) (dismissing CIPA claims involving pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place").[4]

Other than parroting the terms of the statute by baldly alleging the interception occurs "in transit," (Compl. ¶ 66), Plaintiff pleads no facts to support his allegation, nor does he describe when the alleged interception takes place. His claim fails for this reason as well.

***Willful.*** To state a clause-two claim, Plaintiff must plausibly allege LinkedIn "willfully" obtained and read, or attempted to read, his communications with Headway. Here too, Plaintiff's allegations are little more than a bare recitation of the statute's elements copied from his counsel's other pleadings—they are thus not entitled to a presumption of truth. *Twombly*, 550 U.S. at 570. Specifically, he pleads that "LinkedIn, willfully and without the consent of Plaintiff and Class Members, read or attempted to read, or learn the contents or meaning of Plaintiff's and Class Members'" and "used or attempted to use the communications and information they received through their tracking technology, including to supply advertising services." (Compl. ¶¶ 66-67.) Without citing any factual basis in support, Plaintiff asserts that "LinkedIn is well aware of the dangers of incorporating such technology on websites that offer medical and health services, but continues to do so." (*Id*. ¶ 8.) Plaintiff must plead more to state a violation of CIPA, and courts

---

[4] *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (dismissing and finding allegation that "application program is 'plugged into' Ring's website and allows chats to be routed 'in real time' . . . fail[s] to provide specific factual allegations"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough" to "make it plausible Google is intercepting [plaintiff's] data in transit").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

have dismissed similar claims based on far more detailed allegations of intent. *Cf. Heiting v. Taro Pharm s. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (holding allegations that "Defendant paid Genesys to intercept messages . . . [did not] demonstrate[] Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation"). Even if such allegations were sufficient, Plaintiff cannot plausibly allege intent on the face of LinkedIn's policies disclosing the ***opposite*** intention—that LinkedIn does not want to receive sensitive information and expressly prohibits websites from transmitting such data to LinkedIn through its Advertising Agreement and Ads Policies. (Reddy Decl. Ex. B, LinkedIn Ads Agreement ("You will also not transfer to LinkedIn any data that . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals."); *id.* Ex. C, LinkedIn Advertising Policies) ("Ads must not target based on sensitive data or categories . . . including medical information and consumer health data.").)

*Doe* is instructive. There, Judge Chhabria found "plaintiffs have not adequately alleged that Google intentionally obtained patients' private health information" via Google Analytics, *inter alia*, because "Google repeatedly told developers not to send personally identifiable information" and thus "purposefully acted so as ***not*** to receive any personal health information." *Doe I*, 2024 WL 3490744, at *4 (emphasis added). Plaintiff's claim here fails under the same reasoning.

### 4. Plaintiff's Claim Under CIPA's Third Clause Has Further Flaws.

A claim brought under CIPA's third clause for use of unlawfully obtained data must be predicated on a violation of one of the first two clauses and thus fails because Plaintiff does not assert a viable claim under either of those clauses. *In re Google Assistant Privacy Lit.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they have failed to plead a violation of third clause."); *Mastel,* 549 F. Supp. 3d at 1137 (no derivative liability under third clause without predicate).

Additionally, as discussed above, Plaintiff pleads no facts that render plausible his unsupported allegation that LinkedIn independently used any of the allegedly intercepted

Cooley LLP
Attorneys at Law
San Francisco

14

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

information. His conclusory allegation that LinkedIn "is able to target its account holders for advertising" alleges what is possible, but not what occurred here. (Compl. ¶ 28.) And his claim that "personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions" is inadequate to plead that LinkedIn used any of his data. (*Id*. ¶ 18.) These general allegations are simply not tethered to Headway or Plaintiff. In this way, this is an even more attenuated series of allegations than those rejected in *James*: that "record[ing] the data and stor[ing] it . . . is insufficient to support a plausible interference [*sic*] [the analytics provider] attempted to read or learn [its] contents." 2023 WL 8879246, at *3. Plaintiff's clause-two claim fails for this reason as well.

Accordingly, Plaintiff's Section 631 claim against LinkedIn must be dismissed with prejudice for multiple, independent reasons.

### B.    Plaintiff Fails to State a Claim Under CIPA § 632.

To state a claim under Section 632, Plaintiff must show, *inter alia*, that LinkedIn intentionally recorded a confidential communication by means of an "amplifying or recording device." *See* Cal. Penal Code § 632. Plaintiff has not satisfied his pleading burden for two reasons. He fails to adequately allege that LinkedIn "intentionally" recorded a "confidential" communication, and that the Insight Tag—a piece of JavaScript software code—qualifies as an "amplifying or recording device."

***Intentionally Record.*** Like his Section 631 claim, Plaintiff's Section 632 claim is insufficient because his Complaint fails to allege that LinkedIn acted with "intent." (*See generally* Compl. ¶¶ 71-81.) Further, his only allegations regarding LinkedIn's state of mind merely parrot Section 631's elements. (*Id.* ¶¶ 65-66.) These allegations are insufficient under the statute, which requires that he allege "specific factual circumstances that make plausible [LinkedIn's] intent to record a confidential communication." *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (finding allegation that Defendant "had a policy or practice of recording telephone conversations" too conclusory to plead intent). Indeed, California courts have long held that Section 632(a)'s intent requirement is satisfied only if "the person using the recording equipment [did] so with the ***purpose or desire*** of recording a confidential conversation, or with the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

1    ***knowledge to a substantial certainty*** that his use of the equipment will result in the recordation of

2    a confidential conversation." *People v. Superior Court (Smith)*, 70 Cal. 2d 123, 134 (1969)

3    (emphases added). It is not enough to intend to use a recording device; instead, a defendant must

4    ***intend to use it for an impermissible purpose***. This rule "provides effective protection against

5    'eavesdroppers' without penalizing the innocent use of recording equipment." *Id.* Plaintiff's

6    perfunctory pleading, coupled with LinkedIn's policies specifically prohibiting advertising

7    customers from sending sensitive information via the Insight Tag, belies any plausible inference

8    that LinkedIn ***intended*** for advertising customers to use the Insight Tag for an impermissible

9    purpose.

10       ***Device.*** Plaintiff's Section 632 claim also fails because he does not plead that the Insight

11   Tag is an "amplifying or recording ***device***." Cal. Penal Code § 632(a). Plaintiff alleges that the

12   Insight Tag "is a JavaScript-based code which allows for the installation of its software." (Compl.

13   ¶ 23.) Numerous courts interpreting CIPA recognize that software is not a "device," and have

14   dismissed CIPA claims challenging software. *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850,

15   at *11 (S.D. Cal. Aug. 19, 2024) (dismissing Section 632 claim based on recording by software);

16   *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (holding same)

17   ("Because software does not constitute a 'device' under the CIPA, Plaintiff's § 632 claim against

18   Microsoft is deficient."); *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* 2017 WL

19   6387764, at *5 (N.D. Cal. Dec. 14, 2017) (holding "device" does not apply to software under CIPA

20   § 637.7); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (holding

21   same). This approach is well-reasoned and consistent both with rules of statutory construction and

22   CIPA's legislative history.

23       In interpreting California law, courts look to the "actual words of the statute" and "giv[e]

24   them a plain and commonsense meaning." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at

25   193 (quoting *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627

26   (1997)). *Moreno* is instructive. There, the court interpreted a different provision of CIPA and

27   observed that a device is generally understood as a "thing," "a piece of mechanical or electronic

28   equipment," or "a piece of equipment or a mechanism designed to serve a special purpose or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

perform a special function." 2017 WL 6387764, at *5. It then concluded that because the term "device" refers to a physical object, it did not apply to the software at issue. *Id.*; *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193 (holding same). Legislative history is likewise consistent with this interpretation. The legislature chose to limit Section 632 to electronic "devices," and although the statute was modified in 2017 by AB 1671, those revisions did nothing to modify the statute to address software.

LinkedIn acknowledges that a handful of courts in this district have denied this argument at the pleadings stage and allowed plaintiffs to allege that software is a "device" for purposes of section 632. In *Doe v. Meta Platforms* and *Yockey*, the Court found that software was a device for purposes of § 632 based on cases interpreting the term in the federal Wiretap Act. *Doe v. Meta Platforms, Inc.* 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024); *Yockey*, 2024 WL 3875785, at *7. But neither of those courts considered legislative history or the plain language of the statute, and the federal Wiretap Act cases on which those courts relied invoked the definition of "device" in the Wiretap Act, which has no application here. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) (construing specific language in the definition of "device" under Wiretap Act). Instead, this Court should adopt the same reasoning it applied in *In re Google Location History Litig*. There, this Court dismissed a claim under a different provision of CIPA, observing that "Software like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193 (quoting *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). The same is true here— Insight Tag is no closer to being a device than Google Maps is.

Accordingly, Plaintiff's Section 632 claim should be dismissed for this reason as well.

**C.    Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution.**

The California Constitution, Art. I, Sec. 1 "set[s] a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (Koh, J.). To state a claim for invasion of privacy, a plaintiff must allege (1) a legally protected privacy interest, (2) a

reasonable expectation of privacy under the circumstances, and (3) highly offensive conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). Since these elements overlap with the elements of a common law claim for intrusion upon seclusion, case law analyzing these causes of action is often considered interchangeably. *See, e.g., Hammerling v. Google LLC*, 2022 WL 17365255, at *8 (N.D. Cal. Dec. 1, 2022) (analyzing the tests together).

Where, as here, the invasion of privacy claim shares a factual basis with a defective wiretapping claim (*see, e.g.*, Compl. ¶¶ 82-88), it should likewise be dismissed. *Graham*, 533 F. Supp. 3d at 836 ("Because there was no plausible wiretapping by FullStory, the plaintiffs did not plausibly plead that they possess a legally protected privacy interest."); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same). However, even if the Court considered the Plaintiff's constitutional claim on its own merit, Plaintiff's allegations fall short of clearing the California Constitution's "high bar" for stating a claim. This Court should dismiss this claim with prejudice.

### 1. Plaintiff Fails to Allege Any Protected Privacy Interest.

"Just as the right to privacy is not absolute, privacy interests do not encompass all conceivable assertions of individual rights." *Hill*, 7 Cal. 4th at 35. Legally recognized privacy interests are generally categorized into "two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without … intrusion … ('autonomy privacy')." *Id.* (emphasis added). Plaintiff alleges neither. This Court should dismiss this claim with prejudice.

### a. Plaintiff Fails to Allege an Informational Privacy Interest.

"Where informational privacy is involved, the primary objective is to regulate the unnecessary collection ***and improper use of such information for dissemination***." *Dep't of Fair Employment & Housing v. Superior Court*, 99 Cal. App. 4th 896, 904 (2002) (emphasis added). Plaintiff fails to allege, as he must, that LinkedIn disseminated or misused his sensitive and confidential information. *Hill*, 7 Cal. 4th at 35. "[C]ourts hearing information privacy cases focus

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

1    ***both*** on the nature of the stored information and ***the way it is used***." *Jones v. Tonal Sys., Inc.*, 2024

2    WL 4357558, at \*13 (S.D. Cal. Sept. 30, 2024) (emphasis added). Where "[t]here is no evidence

3    [that the defendant] seeks to disseminate or misuse the information requested," courts do not find

4    that an informational privacy interest is implicated. *See Dep't of Fair Employment & Housing*, 99

5    Cal. App. 4th at 904; *Gutierrez v. Select Portfolio Servicing Inc.*, 2015 WL 13917190, at \*3 (C.D.

6    Cal. June 17, 2015); *Herbalife Int'l of Am., Inc. v. Ford*, 2009 WL 10715605, at \*5 (C.D. Cal. Mar.

7    6, 2009). Here, Plaintiff makes ***no*** allegation that LinkedIn disseminated his information. (*See, e.g.*,

8    Compl. ¶¶ 29, 34 (alleging that LinkedIn "intercepts," "receives," and "collects" sensitive

9    information).) And, as discussed, Plaintiff not only fails to plausibly allege that ***LinkedIn*** uses the

10   challenged information, but his specific allegations clarify that LinkedIn merely provided a tool

11   that allowed ***Headway*** to make use of the information that Plaintiff voluntarily shared with

12   Headway. *Supra* Section III.A.1.

13               **b.**     **Plaintiff Fails to Allege an Autonomy Privacy Interest.**

14               California courts have recognized an autonomy privacy interest only "in cases alleging

15   ***bodily*** autonomy," that is, in cases implicating invasions into physical, bodily choices. Plaintiff's

16   failure to plead any facts suggesting bodily autonomy is at issue forecloses this path. *In re Google

17   Location Hist. Litig.*, 428 F. Supp. 3d at 198 (emphasis in original) (collecting cases). Fact patterns

18   raising the issue of autonomy privacy involve physical, real-world invasions of privacy, such as

19   constraints on women's decisions about bearing children or mandatory drug testing through forced

20   urine samples. *Comm. to Def. Reprod. Rights v. Myers*, 625 P.2d 779, 792 (Cal. 1981) (noting

21   constitutional right of privacy in women's "personal bodily autonomy"); *Smith v. Fresno Irrigation

22   Dist.*, 84 Cal. Rptr. 2d 775, 785 (1999) (discussing autonomy privacy in the context of drug testing

23   through use of a urine sample). Courts have not found "cause to extend the bodily autonomy line

24   of cases to data autonomy." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198; *In re Yahoo

25   Mail Litig.*, 7 F. Supp. 3d 1016, 1039 (N.D. Cal. 2014) (noting California courts limit autonomy

26   privacy to "cases alleging *bodily* autonomy"). While Plaintiff makes vague assertions, again copied

27   from his counsel's other pleading,[5] that he has "an interest in . . . making personal decisions and/or

28

_____

[5] *L.B. v. LinkedIn*, 5:24-cv-06832-EJD (N.D. Cal. Sept. 27, 2024), Compl. at ¶ 83.

conducting personal activities without observation," (Compl. ¶ 83), he in fact alleges no physical intrusion compromising his bodily autonomy and therefore alleges no autonomy privacy interest.

### 2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy in His Online Commercial Activity.

Plaintiff's constitutional claim fails for the additional reason that his expectation of privacy was not reasonable under the circumstances. In general, a "reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal. 4th at 37. In cases challenging the data collection practices of corporate actors, courts consider factors including "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Here, the amount of data allegedly collected was minimal, confined to particular interactions on a particular portion of a single website (*see* Compl. ¶¶ 40-43), and its collection comported with LinkedIn's express representations to its customers, *see infra* Section III.C.2.

Plaintiff fails to allege a reasonable expectation of privacy because nothing in his pleading demonstrates that expectation was ***reasonable*** under the circumstances. Plaintiff concedes that he voluntarily visited Headway's website and transmitted information to Headway, and nowhere plausibly alleges that such transmissions should remain private from ***Headway or its agents***. Virtually all consumer-facing websites track the conduct of web visitors. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *3 (S.D. Cal. May 8, 2024) (noting that the proliferation of litigation in this area "suggest[s] Defendant is not alone in this practice," and finding that this is "a factor to consider"). Generally speaking, "consumers do not have a reasonable expectation of privacy over their activity" on public websites because we "understand that what we do on the Internet is not completely private." *Id.* at *2 (internal quotations omitted); *see D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-*11 (S.D. Cal. Oct. 24, 2023) (stating "accepted community norms around conversations in this type of space . . . point away from a reasonable expectation of privacy"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524-25 (C.D. Cal. 2021) (no reasonable expectation of privacy on Nike website); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

(W.D. Wash. Dec. 21, 2023) (stating that, *inter alia*, "URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections to a shopping cart, and website browsing activities" are not the types of information in which plaintiffs could have "a reasonable expectation of privacy"). And where it is "widely known" that the challenged informational practices may occur, "a reasonable expectation of privacy is . . . diminished." *Medical Bd. of California v. Chiarottino*, 225 Cal. App. 4th 623, 636 (2014). Given that the challenged practices are nearly universal on consumer-facing websites, no user can reasonably expect that the web pages she visits, or the information she provides on such a website, are completely private.

Finally, courts are similarly skeptical where "Plaintiffs do not allege that Defendant set out an expectation that it would not collect" the challenged data. *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *17 (S.D. Cal. Mar. 28, 2024). Here, Plaintiff himself alleges that LinkedIn's Privacy Policy clearly discloses that it "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services,'" and "'allow[s] some others to use cookies as described in our Cookie Policy.'" (Compl ¶ 32 (quoting Privacy Policy, LinkedIn, https://www.linkedin.com/legal/privacy-policy (Sept 18, 2024).) LinkedIn also explicitly tells users "[w]e receive information about your visits and interaction with services provided by others when you visit others' services that include some of our ads, cookies or similar technologies." (Reddy Decl. Ex. D, LinkedIn Privacy Policy at § 1.8.) All the challenged data here falls under these two disclosures. Thus, because LinkedIn disclosed precisely the data practices Plaintiff challenges, he fails to allege any reasonable expectation of privacy. *Hill*, 7 Cal. 4th at 26; *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037–38.[6]

---

[6] While Plaintiff alleges that he did not consent to purported interception, (Compl. ¶ 46), "allegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy." *D'Angelo*, 2024 WL 1625771, at *17.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

### 3.    The Routine Commercial Behavior Alleged Is Not Highly Offensive as a Matter of Law.

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. To count as "highly offensive," an intrusion must constitute an "egregious breach of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal. 4th at 26, 37). This high standard requires more than mere "disclosure of personal information," *Low*, 900 F. Supp. 2d at 1025, and indeed, more than mere "private medical information."

Rather than finding an alleged disclosure of any kind of information from any health-related website dispositive, courts analyzing whether a plaintiff alleges a *highly* offensive intrusion undertake a holistic consideration of "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, [and] the intruder's motives and objectives[.]" *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023); *Hammerling*, 2022 WL 17365255, at *8. This analysis again weighs in favor of dismissal with prejudice.

*First*, Plaintiff fails to plead any risk of "serious harm," much less with the requisite specificity as to, for example, "the form and extent of the distress and alienation suffered." *Ojeda v. v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *7 (C.D. Cal. Nov. 29, 2022). In a case in which the plaintiff's Covid vaccine status was disclosed, the court noted that because this topic was politically "polarized," the court "could imagine a scenario where an unjustified, reckless, or punitive disclosure of non-vaccination status by a superior to many of an employee's colleagues could at least raise a question of fact as to offensiveness to be resolved by a jury." *Id.* Despite this, the court went on to find that the "[p]laintiff [] failed to allege sufficient facts to establish that the disclosure here was *highly offensive*," because she failed to allege with particularity indispensable facts such as "how many people to which the email was sent; whether Plaintiff was singled out as the only employee (or one of very few) on the list who was not vaccinated," or "whether, by nature of the job assignments, colleagues could otherwise infer vaccination status." *Id.* (emphasis in original).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD

Here, too, Plaintiff fails to allege ***any*** facts about harm he suffered because of the alleged conduct. Because Plaintiff merely offers vague claims of unspecified "economic injury" and "breach of Plaintiff's privacy" (Compl. ¶¶ 7, 53), on the facts alleged—limited disclosure of information to a single party—this Court should conclude that he cannot satisfy the pleading standard.[7]

***Second***, Plaintiff cannot rely on his generic allegations that "LinkedIn utilized Plaintiff's . . . information for its own purposes, including for targeted advertising" (Compl. ¶ 79), to evidence some incriminating motive. *Hammerling* is again instructive. Noting that "[t]he provision of new, improved, and more personalized services is . . . largely indistinguishable from, [defendant] Google's 'commercial purposes,'" the Court was "unpersuaded that Plaintiffs' alleged motive for Google's data collection—that 'Google was using the data for its own purposes' … — alter[ed] this conclusion." *Hammerling*, 2022 WL 17365255, at \*9 n.13. Further, Plaintiff does not plead any facts suggesting LinkedIn's alleged receipt of his information was "intentional, punitive, [or] reckless" rather than "inadvertent." *Ojeda*, 2022 WL 17227249, at \*7. "[N]o cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez v. Hillside*, 47 Cal. 4th 272, 295 (2009). Even where "privacy damage . . . is serious," a plaintiff must allege "***intentional***, egregious privacy invasion." *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at \*2 (S.D. Cal. June 7, 2018). By contrast, courts have held that allegations of "accidental" conduct "of the kind that is inevitable when human beings process large

---

[7] Plaintiff will no doubt invoke *M.G. v. Therapymatch, Inc.*, in which the Court determined there was a "factual question" as to whether information from the same website at issue in this case implicated an invasion of privacy "sufficiently serious . . . to constitute an egregious breach of . . . social norms," and on this basis, denied the motion to dismiss the constitutional invasion of privacy claim. 2024 WL 4219992, at \*6 (N.D. Cal. Sept. 16, 2024). Respectfully, LinkedIn submits that the *M.G.* Court reached the wrong conclusion because it simply assumed that the alleged interception of information about a person's activities on a public, mental-health-related website was enough to state a claim.

Cooley LLP
Attorneys at Law
San Francisco

23

Def.'s Motion to Dismiss
Plaintiff's Complaint
Case No. 5:24-cv-07586-EJD

1  amounts of information" are "not necessarily sufficient to sustain a claim under article I, § 1" of

2  the California Constitution. *Doe v. Beard*, 63 F. Supp. 3d 1159, 1169 (C.D. Cal. 2014).

3          Instead of suggesting any culpable motive, this limited collection of information in a

4  commercial setting alleged falls within the boundaries of "routine commercial behavior," which

5  courts consistently find is not highly offensive. *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th

6  986, 992 (2011). LinkedIn's Insight Tag is an example of a ubiquitous commercial technology, and

7  this Court should easily find that use of such technology is routine commercial behavior rather than

8  any highly offensive practice. *Fogelstrom* is instructive on this point: There, as here, the challenged

9  practice included alleged nonconsensual obtainment of the plaintiff's personal information, which

10 was used to serve advertisements to him. *Id.* The court in that case found that "the conduct of which

11 plaintiff complains does not constitute a 'serious' invasion of privacy." *Id.* Similarly, in *Yunker v.*

12 *Pandora Media, Inc.*, the Court found allegations that defendant "Pandora obtained [the plaintiff's]

13 PII and provided that information to advertising libraries for marketing purposes" to be "similar to

14 the allegations in . . . *Fogelstrom*." 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (finding

15 plaintiff's allegations insufficient to show highly offensive conduct). This Court should reach the

16 same conclusion.

17         Courts find allegations of a highly offensive intrusion sufficient only where there are far

18 more extreme, pervasive intrusions than a limited collection of pre-defined selections on certain

19 pages of a single website. *See, e.g.*, *Goodman v. HTC America, Inc.*, 2012 WL 2412070, *15 (W.D.

20 Wash. June 26, 2012) (finding allegations "that Defendants engaged in the continuous tracking of

21 their location and movements" plausibly highly offensive because "GPS monitoring generates a

22 precise, comprehensive record . . . that reflects a wealth of detail about . . . familial, political,

23 professional, religious, and sexual associations"); *In re Google Location Hist. Litig.* 514 F. Supp.

24 3d 1147, 1158 (N.D. Cal. 2021) (same where plaintiffs did not "allege that Google only collected

25 information at discrete, intuitive times, but rather, they specifically allege that Google collected

26 location information constantly"). Such facts are worlds away from this case.

27 //

28 //

**IV.    CONCLUSION.**

For the foregoing reasons, Plaintiff's CIPA and California constitutional invasion of privacy claims should be dismissed with prejudice.

Dated: November 22, 2024                    COOLEY LLP


By: *s/ Jeffrey M. Gutkin*
    Jeffrey M. Gutkin

Attorney for Defendant
LINKEDIN CORPORATION

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEF.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 5:24-CV-07586-EJD